CAROLINE C. STEPHAN, Administratrix, Appellant, v. GREAT
WESTERN ACCIDENT INSURANCE COMPANY, Appellee.

No. 39149.

SEPTEMBER 28, 1928.

REHEARING DENIED DECEMBER 13, 1929.

*Raymond N. Klass* and *Maurice P. Cahill*, for appellant.

*Grimm, Wheeler, Elliott & Shuttleworth*, for appellee.

MORLING, J.—The policy (dated March 29, 1919), "in con-
sideration of the payment of an annual premium of $19 * * *
insures George A. Stephan * * * by occupation lightning-rod
salesman under Classification '2' for a period of one year from
date hereof and for such further periods as the payment of the
installments named in the five-year guarantee contract will pur-

chase at said rate of premium; * * * For Accidental Loss of Life Two Thousand Dollars.''

The policy provides:

"In the event that the insured is injured after having changed his hazard or occupation to one classified by the company as more hazardous than that stated in the policy (except ordinary duties about his residence or while engaged in recreation), in which event the company will pay only such portion of the indemnity provided in the policy as the premium paid would have purchased at the rate but within the limits fixed by the company for such more hazardous occupation. * * * If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy but only to cover accidental injury thereafter sustained * * * If the insured shall at any time change his occupation to one classified by the company as less hazardous than that stated in the policy, the company, upon written request of the insured, will apply the unearned premium upon a policy fitting said less hazardous occupation at the regular rates of the company for that class.''

The annual premiums appear to have been paid regularly to and including March 29, 1925. The premium payable March 29, 1926, was not paid until May 3, 1926. Meantime (just when does not appear), insured had changed his occupation from lightning-rod salesman to house painter. On May 3, 1926, insured paid the delinquent premium to defendant's agent, who at that time knew of the change of occupation. Insured, on June 26, 1926, while engaged as house painter, was accidentally killed by falling from a house painter's scaffold. It is stipulated that the occupation of house painter was at all times classified by defendant as more hazardous than that of lightning-rod salesman. An annual premium of $19 would purchase for a house painter, on the same form of policy as that sued on, an accidental death benefit of $600, and for a lightning-rod salesman, $2,000. This was in accordance with defendant's "premium rates and classifications lawfully established and in effect in the state of Iowa at the time said policy was originally issued and at all times subsequent thereto.'' The agent, at the time of accepting the premium, "made no changes in the occupation or classification

thereof or in the amount of insurance provided therein in said policy, nor did he advise said Stephan of any such changes made or to be made. * * *'' We find it unnecessary to rule upon counsel's discussion of the question of the authority of the agent.

That question being passed, plaintiff's contention, in substance, is that, by reinstating the policy and retaining the premium with knowledge of change of occupation, defendant entered into a new contract, binding it to pay the stipulated benefit of $2,000, and ''waived the prorating or other provisions to the contrary.''

Classification of risks and the gradation of premiums in accident insurance on the basis of the hazards of the employment of the insured are usual, if not fundamental. The more hazardous the occupation, the greater the premium for the same insurance or benefit. Defendant is not seeking to prorate, nor is it claiming forfeiture of the policy for misrepresentation of occupation or other reason. It is not claiming that the policy is void, in whole or in part, or, as plaintiff seems to argue, that the policy is void for the difference between $600 and $2,000. Defendant is standing upon and offering to perform the terms of the policy, by which the indemnity or benefit under the admitted conditions is $600. The insured was properly classified when the policy was issued, and the case is not one of misclassification known to be such by the agent taking the application for the policy. Cases relied on by plaintiff, such as *Bucknam v. Interstate Business Men's Acc. Assn.*, 183 Iowa 652; *Murray v. Preferred Acc. Ins. Co.*, 204 Iowa 1108, are not in point. Plaintiff argues that defendant's receipt of the premium and reinstatement of the policy after default operated as a new contract. The reinstatement of a policy of insurance which has wholly terminated for nonpayment of premium requires a contract therefor. 32 Corpus Juris 1143. The contract of reinstatement of the policy does not, however, of itself change or enlarge the terms and conditions of the insurance. The policy, when reinstated (unless changed by new agreement, express or implied), evidences the continued terms and conditions of the contract of insurance. The mere fact of reinstatement after forfeiture does not, of itself, work a change in the terms and conditions of the insurance as originally written. As we have said:

"Moreover, the reinstatement was not the making of a new contract, for no new or different terms were agreed upon. It was simply the cancellation of a forfeiture, whereupon the contract was restored and recognized as binding by the company." *Goodwin v. Provident Sav. Life Assur. Assn.*, 97 Iowa 226, 238.

See, also, *Lindsey v. Western Mut. Aid Soc.*, 84 Iowa 734, 741; *Business Men's Assur. Co. v. Scott*, 17 Fed. (2d Ser.) 4; *Cason v. Mutual L. Ins. Co.*, 67 Colo. 199 (184 Pac. 296, 6 A. L. R. 1395); *Eicks v. Fidelity & Cas. Co.*, 300 Mo. 279 (253 S. W. 1029); 32 Corpus Juris 1144.

The contract of insurance now before us is, so long as it continues in force, self-adjusting between the premium paid and death benefit, so that, in the event of change of occupation, if to a more hazardous one, the beneficiary is protected in the right to receive the death benefit to the amount paid for, and if less hazardous, the insured is entitled to the stipulated application of unearned or excess premium paid. These important elements of the contract were not changed by mere reinstatement of the policy after suspension or lapse. See *McPeck v. Travelers Equitable Ins. Co.*, 55 N. D. 750 (215 N. W. 217).

This action is at law, and is to recover upon the policy as written. It is not a suit in equity, to reform the policy or the contract of renewal for fraud or mistake, nor is fraud or mistake shown.

By Section 1782, Code Supplement, 1913, in effect when the policy in question was issued, and Section 8666, Code of 1924, no accident insurance company "shall make or permit any distinction or discrimination between persons insured of the same class and equal expectancy of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms or conditions of the contract it makes; nor shall any such company * * * make any contract of insurance agreement, other than as plainly expressed in the policy issued; nor shall any such company or association or agent pay or allow, directly or indirectly, as an inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or

any valuable consideration or inducement whatever, not specified in the policy or contract of insurance.''

By the company's established rates, a premium of $19 would provide for a house painter only $600 death benefit. For the company to give the deceased, for that premium, while in such occupation, a death benefit of $2,000 would be to plainly discriminate in his favor in the benefits and conditions of its contracts, and allow to him, or his estate, an advantage not specified in the contract.

Plaintiff moves to strike appellee's amendment to abstract. The motion is overruled.—*Affirmed*.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.