LAMAR et al. v. ÆTNA LIFE INS. CO.
No. 1376.

Circuit Court of Appeals, Tenth Circuit.
July 24, 1936.

Robert C. Foulston, of Wichita, Kan. (William T. Burris and Charles J. Ribar, both of Pueblo, Colo., on the brief), for appellants.

John P. Akolt, of Denver, Colo. (Elmer L. Brock, E. R. Campbell, Milton Smith, Karl F. Crass, and J. H. Shepherd, all of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action to recover on a policy of life insurance issued on the life of Ralph F. Lamar. Plaintiffs are the surviving widow and children of the insured. The facts were detailed in the amended complaint. The policy was dated June 4, 1932, and provided for a monthly premium of $31.30 payable on the fourth day of each succeeding month in advance at the home office of the company or to its authorized agent; and, further, that if any premium should not be paid when due the policy should cease, subject to the values and privileges therein specified, except that a grace period of thirty-one days was provided for the payment of each premium after the first during which the insurance should remain in force. It further provided that it should share in the divisible surplus of the participating business of the company at the end of each policy year; that the dividends on the anniversary date of the policy should be applied (a) to the payment of any premium or premiums or paid in cash; or (b) to the purchase of participating paid-up additions; or (c) left with the company to accumulate at a rate of interest not less than three and one-half per cent. per annum; and that if no election were made, the first option should be used. A dividend of $39.36 was declared at the end of the first year. In the absence of a contrary election and with the consent of the insured, $3.28 of it was applied in payment of each of the monthly premiums due for June, July, August, and September, 1933, and insured paid the balance of $28.-02 in cash. The remainder of the dividend on October 4th was $26.24. Insured failed to pay any part of the premium which was due on that day. On November 4th he wrote the general agent of the company that the grace period expired that day; that he would be unable to send a check for the premium

for a week or two; and that according to his figures, he still had a dividend credit of approximately $27. He then inquired whether the credit could be applied to the premium, and if so, how long it would keep the policy in force. Two days later the agent replied that he was requesting the home office of the company to change its records to show that the eight remaining monthly dividends of $3.28 were all to be applied toward payment of the premium due October 4th; that form No. 234 was inclosed; that it should be signed and returned with a check for $5.06 to complete payment of the premium; and that the proposed application of the dividends meant that subsequent monthly premiums must be paid in full, that is $31.30 each. The form which was inclosed directed application of the dividend to the described premium and expressly recited that the request would not be effective unless signed while the policy was in force. Insured neither responded to the letter nor signed the form. On the 14th of the month the general agent wrote insured that in the absence of an answer to the former letter, he had been obliged to notify the home office that the policy had lapsed and expressed the hope that application for reinstatement would be promptly made by completing and returning a form which was inclosed, with a check for the full premium less the current dividend of $3.28 or for $5.06 to be applied with the eight remaining monthly dividends. It was further stated that the proceeds of any payment would be held in a pending account subject to the order of insured until the company had an opportunity to act on the matter of reinstatement. No reply was made to that letter. Insured suffered an accidental injury on November 26th from which he died two days later without having made any payment in cash on the premiums after September 4th.

Holding that the policy had lapsed and was not in force at the death of the insured, the trial court sustained a demurrer to the amended complaint. Plaintiffs declined to plead further and judgment was entered against them. They appealed.

■ The principal point of contention is that it was the duty of the company to apply the remainder of the dividend to the premium which became due on October 4th; that such payment continued the policy in effect during that part of the ensuing month which bore the same ratio to the entire month that the pro rata payment bore to the full month; and that the grace period added continued it in force beyond the death of the insured. The first option with the automatic provision that it should be used in the absence of an election is relied upon to sustain the contention. The option was twofold. It provided that the dividend should be applied to the payment of premiums or paid in cash without specifying who should make the choice between the alternatives. We entertain no doubt that the insured had the choice and shall proceed on that assumption. His letter of November 4th expressed a desire that the remainder of the dividend be applied to the past due premium; but the amount was less than the monthly premium and he did not tender the balance. It is the general rule of law that where an insurer has in its possession sufficient unapplied dividends presently due the insured to pay the stipulated premium, it should apply them in extinguishment of the premium and thus avoid lapse of the policy unless the insured directs otherwise. And the law will make the application if the insurer fails to act, the consent of the insured thereto being presumed. Kincaid v. New York Life Ins. Co. (C.C.A.) 66 F.(2d) 268; Union Cent. Life Ins. Co. v. Caldwell, 68 Ark. 505, 58 S.W. 355; Mutual Life Ins. Co. v. Henley, 125 Ark. 372, 188 S.W. 829; Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S.W. 847, 54 A.L.R. 600; McNaughton v. Des Moines Life Ins. Co., 140 Wis. 214, 122 N.W. 764; Caywood v. Supreme Lodge, Knights & Ladies of Honor, 171 Ind. 410, 86 N.E. 482, 23 L.R.A.(N.S.) 304, 131 Am.St.Rep. 253, 17 Ann.Cas. 503; Mutual Life Ins. Co. v. Breland, 117 Miss. 479, 78 So. 362, L.R.A. 1918D, 1009; Rogers v. Union Benevolent Society, 111 Ky. 598, 64 S.W. 444, 55 L.R.A. 605; National Council, etc., v. Thomas, 163 Ky. 364, 173 S.W. 813; Equitable Life Assur. Soc. v. Pettid, 40 Ariz. 239, 11 P.(2d) 833. But it is equally well settled that such dividends must be sufficient in amount to discharge the premium in full, otherwise the doctrine has no application and lapse is not prevented. Terry v. State Mut. Life Ins. Co., 90 S.C. 1, 72 S.E. 498; Metropolitan Life Ins. Co. v. Smith, 48 Ga.App. 245, 172 S.E. 654; Young v. Mutual Trust Life Ins. Co., 54 N.D. 600, 210 N.W. 177, 53 A.L.R. 910; Alexander v. Northwestern Mut. Life Ins. Co. (Mo.App.) 290 S.W. 452; Neighbors v. Union Central Life Ins. Co., 17 Tenn.

App. 612, 69 S.W.(2d) 618; Weinstein v. Mutual Trust Life Ins. Co., 116 Conn. 654, 166 A. 63, 92 A.L.R. 708; Equitable Life Assur. Soc. v. Pettid, supra; Eastman, Inc. v. Northwestern Mutual Life Ins. Co., 169 Wash. 125, 13 P.(2d) 488; Cason v. Mutual Life Ins. Co., 67 Colo. 199, 184 P. 296, 6 A.L.R. 1395.

■ This policy provided in clear language for the payment of a specified premium at a fixed time and that failure to make it should terminate the contract subject to certain values and privileges not material here, except during the grace period. It did not contain a provision for installments or partial payments of less than the specified sum. It nowhere stated directly or by fair inference that a partial payment of the stipulated monthly sum would continue the contract in force during a part of the ensuing month. Its provisions—considered separately and collectively—negate any tenable suggestion that the monthly premium could be segregated into parts and paid by installments and the contract continued in force during corresponding fractional parts of the month. They fixed the amount, the time of payment, and the consequence of failure to make it. That consequence was termination of the contract. Construing the letter of November 4th as a direction to apply the remainder of the dividend to the unpaid premium, it could have no greater effect than a tender of that sum to the company. Since it was less than the amount of the premium, it did not prevent lapse of the policy on November 4th. Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029.

Plaintiffs rely strongly on Aetna Life Ins. Co. v. Hartley (Ky.) 67 S.W. 19, and Halliday v. Equitable Life Assur. Soc., 54 N.D. 466, 209 N.W. 965, 47 A.L.R. 446. There is a controlling distinction between each of those cases and this one. In each of them it was held that the company had actually made application of the dividend to a pro rata payment of the premium and that such payment continued the policy in force until it was exhausted, which was subsequent to the death of the insured. And in Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S.W.(2d) 931, the company accepted $4.84 and applied it as part payment of a so-called blue note which had been given for an unpaid semiannual premium. The court held that such voluntary acceptance and application operated to continue the policy during the proportionate part of the six months' period. No such application was made here. The matter was discussed in the correspondence, but the proffered consent of the company to make it was conditioned upon payment of the balance of the premium in cash. If the balance had been paid, the company would have been obliged to apply the dividend to the premium and lapse would not have occurred. Unfortunately, the small balance was not paid and that omission is decisive.

■ It is further argued that the company waived forfeiture of the policy. The contention is founded upon the letter written by the general agent on November 6th and the form which was inclosed with it. A provision in an insurance policy that the contract shall lapse upon nonpayment of the premium is for the benefit of the insurer and it may be waived, but there are two separate reasons why lapse was not waived here. First, the policy expressly provided in clear terms that only the president, vice president, secretary, assistant secretary, treasurer, or assistant treasurer could extend the time for payment of a premium or alter or waive any of the conditions contained in the contract. That provision is valid and binding. Slocum v. New York Life Ins. Co., supra; Exchange Trust Co. v. Capitol Life Ins. Co. (C.C.A.) 49 F.(2d) 133. It is not suggested that any of the named officers ever agreed to relax the requirement for full payment of the premium for the month of October. Second, if the general agent had authority to act in the premises, the letter merely stated that the home office was being requested to change its records to show that the remainder of the dividend was being applied toward the past due premium and that was clearly conditioned upon payment of the balance in cash. The letter and form could not reasonably have led insured to believe that without payment of the balance the dividend was being applied as a pro rata payment which would have the effect of extending the policy through a portion of the month. The essence of waiver of lapse for nonpayment of premium is a course of conduct on the part of the insurer which reasonably leads the insured to believe that lapse will not be exacted. Globe Mutual Life Ins. Co. v. Wolff, 95 U.S. 326, 24 L. Ed. 387; Thompson v. Knickerbocker Life Ins. Co., 104 U.S. 252, 26 L.Ed. 765; Ex-

change Trust Co. v. Capitol Life Ins. Co., supra. There was no such conduct here. Neither did the correspondence lay a foundation upon which to assert estoppel.

The judgment is affirmed.